## ORSON GOODRICH v. H. N. TRACY.

*Promissory Note. Payment. Forgery. Accord and Satisfaction. Agency. Husband and Wife. Evidence.*

The giving of a promissory note to the maker and taking in payment therefor a new note the signatures to which were supposed to be genuine by the payee, but one of which was forged, cannot be regarded as a payment of the original note or extinguishment of the right of action upon the same.

A principal is not bound by acts of an agent in excess of his special and limited authority.

Where the agency of a wife for her husband extended only to the performance of certain specific acts of a general transaction, it was *held* that her acts and admissions in respect to *other* matters connected with the general transaction were not admissible in evidence against the husband.

ASSUMPSIT on a promissory note for $400, made jointly and severally by Asa Sanderson and the defendant, dated January 4, 1868, payable one year from date.

Plea, the general issue, with notice of special matter of defense. Trial by jury, and verdict for the plaintiff, April term, 1870, PIERPOINT, C. J., presiding.

It appeared, without dispute, that in November, 1867, Sanderson, who then and for many years previously had resided in Essex, wrote a letter to the plaintiff's wife, expressing a desire to borrow $400, and requesting Mrs. Goodrich to ascertain if her husband could make the loan. Soon after the receipt of this letter by the plaintiff, he having ascertained from his wife, who was well

acquainted in Essex, that the defendant's name to a note for that amount would make the payment of it secure, requested her to inform Sanderson, by letter, that he could have the money he desired on furnishing a note with defendant's name as security, which she did.

Afterwards, and at about the date of the note above described, the plaintiff, who resided in Richmond, sent the amount of the note in money, by his wife, to Sanderson, who received the money and delivered to her the note in question, and she took it home and delivered it to the plaintiff.

At the time Sanderson delivered said note to Mrs. Goodrich, it was not stamped, Sanderson having no stamps to put on; but he at the same time handed Mrs. Goodrich money sufficient to purchase the requisite stamps; which money she handed to the plaintiff at the same time she delivered him the note ; but the plaintiff being unable conveniently to obtain stamps, omitted to put any on the note until after the defendant had torn off the signatures, as hereinafter stated ; the plaintiff, during all that time, having no intention to defraud the revenue, but acting in good faith in respect to the stamps.

About the time the said note matured, Mrs. Goodrich, at the request of the plaintiff, wrote to Sanderson requesting payment of the note, to which he replied that he could not pay it then, but would give a new note, signed by himself and by either of several residents of Essex, whose names he mentioned in the letter, as surety.

The plaintiff having ascertained from his wife that either of the names mentioned by Sanderson would be sufficient to make a note good, directed his wife to inform Sanderson that the plaintiff would accept another note as proposed, which she accordingly did ; and a few days afterwards Sanderson sent to the plaintiff, in a letter addressed to him at Richmond, another note, of which the following is a copy :

$400.                                   Essex, Jan. 1, 1869.

For value received we severally and jointly promise to pay Orson Goodrich or bearer four hundred one year from date with interest annually.            Asa Sanderson,

S. H. Bliss.

The signature of Sanderson to the note was genuine, but that of Bliss was forged by Sanderson, without the knowledge or consent of Bliss. The fact that Bliss's name was forged was not, however, known or suspected by the plaintiff, but he supposed it to be genuine until informed to the contrary by the defendant, as hereinafter stated. When the last mentioned note was received by the plaintiff, and ever afterwards until he was informed that Bliss's name was forged, he understood and considered that it was a full payment and satisfaction of the former note signed by the defendant; and although he did not return said last mentioned note to Sanderson, he intended to do so whenever requested, and so informed Mrs. Goodrich.

At the time the forged note was received by the plaintiff, he had no particular knowledge of the pecuniary circumstances of Sanderson, but he had learned from his wife that Bliss was a man of large means, and in accepting the note, the plaintiff relied upon Bliss's name mainly, and would not have accepted a note signed by Sanderson alone.

On Sunday, May 23d, 1869, Sanderson having failed and run away to parts unknown, and the defendant having heard reports that Sanderson had committed divers forgeries, the defendant applied to Bliss to know if he had signed, with Sanderson, a note to Mr. and Mrs. Goodrich, and was informed by Bliss that he had not. Whereupon the defendant went directly to the plaintiff's residence in Richmond; found Mrs. Goodrich alone—her husband being about the premises, but not in the house—and inquired of her if he understood her correctly in regard to his note being there. She replied that Bliss had "signed a note for the old one, and your note is here yet, and you can have it," and took it out of the plaintiff's desk and handed it to the defendant, who put it in his pocket. On recovering the note from Mrs. Goodrich, the defendant informed her that Bliss's name to the new note was a forgery, which surprised her very much. Presently the plaintiff came into the room, and his wife informed him, in defendant's presence, of all that had been said to her on that occasion by the defendant, and also told him that she had delivered to the defendant the note signed by him. The defendant testified that he, of

his own accord and without being requested to do so by any one, took the note out of his pocket, tore off the signatures, and handed it to the plaintiff. The plaintiff testified that the note was so returned to him by his request. The defendant also testified that when Mrs. Goodrich handed him the note he asked her if it was all satisfactory, and she replied that it was. The plaintiff at that time made no demand or claim upon the defendant for the payment of the note.

The plaintiff testified that owing to a defect in his hand, which rendered it difficult for him to write, his wife had sometimes, by his express request and not otherwise, written letters for him according to his dictation, and had also, in a few instances, made endorsements of payments on notes held by him, and that he had sometimes sent her to transact simple business matters for him, under special instructions ; but that she had no general authority from him to act as his agent, and had never, to his knowlege, assumed to exercise any authority as his agent, except when specially requested to do so as above stated. Touching the subject of Mrs. Goodrich's authority to transact business for the plaintiff, there was no evidence put into the case except what is hereinbefore detailed.

A witness introduced by the defendant having testified that he was a brother of Mrs. Goodrich, and that, at some time not specified by the witness, she inquired of him relative to the pecuniary standing of the defendant, the defendant proposed to inquire of the witness whether or not he had heard her make similar inquiries of others.

To this the plaintiff objected, and the objection was sustained by the court.

It further appeared that on the 13th of February, 1869, a large school building owned by Sanderson was destroyed by fire ; and the defendant testified, that understanding that Sanderson held policies of insurance on said building, amounting to $6,000 or $7,000, he, (defendant,) in the latter part of that month, resolved to look up the note he had so signed with Sanderson, and if it was unpaid, to take measures to secure himself upon the claims under said policies ; that pursuant to this resolution, he started to

go and see the plaintiff relative to the note, but after going a short distance he met Mrs. Goodrich, had some conversation with her, and concluded to omit going to Richmond, or to take any measures to obtain security.

The defendant then proposed to testify further, that on that occasion Mrs. Goodrich told him that the note had been paid.

To this the plaintiff objected, and the objection was sustained by the court.

The note declared on was introduced in evidence by the plaintiff, and had upon it United States internal revenue stamps to the amount of twenty cents, but it was admitted that these stamps were not affixed until the day following the one on which the defendant tore off the signatures, as before stated. The defendant insisted that the note was void for want of being properly and seasonably stamped, but the court decided otherwise.

Upon the case as above stated, the court ordered a verdict for the plaintiff for the amount of the note declared on, and interest, —to all which rulings and decisions the defendant excepted.

*Lawrence & Burnap*, for the defendant.

*E. R. Hard*, for the plaintiff.

The opinion of the court was delivered by

ROYCE, J. This was an action of assumpsit on a promissory note which the defendant signed as surety for one Sanderson. It was not claimed in the court below that the note in suit had ever been paid or discharged under the circumstances detailed in the exceptions, unless the receipt of the note, dated January 1st, 1869, operated as a payment or discharge. It was admitted that this last note as far as Bliss was concerned (and he was regarded by the plaintiff as the responsible party) was a forgery. The plaintiff received this note in good faith, and did not know but that the signatures to it were genuine until after the note in suit had been given up. Can the receipt of this note be regarded as a payment or extinguishment of the right of action upon the note in suit? We think not. In the case of *Puckford* v. *Max-*

*well*, 6th Term, 52, the defendant being arrested by the plaintiff for £80, gave to the plaintiff a draft for £45, and agreed to settle the remainder in a few days, and was discharged out of custody. The draft was dishonored, the defendant having no effects of the drawee in his hands, whereupon the defendant was again arrested upon the same affidavit. He obtained a rule calling on the plaintiff to show cause why he should not be discharged out of custody, and Lord KENYON, in giving the opinion, says : that in cases of this kind, if the bill which is given in payment does not turn out to be productive, it is not that which it purports to be and which the party receiving it expects it to be, and therefore he may consider it as a nullity and act as if no such bill had been given at all. This case has been frequently cited with approbation and we see no reason to question its soundness. It was held in *Eagle Bank* v. *Smith*, 9th Cowen, 74, that a forged note if delivered in payment is no satisfaction or extinguishment of an antecedent demand. The reason for this is obvious. It is not what the person delivering it either expressly or impliedly affirms it to be, and what the person accepting it believes it to be. The law is well settled that the party giving a security in payment vouches for its genuineness, and that payment of a debt in counterfeit or worthless bills is in legal effect no payment, and in such cases the party receiving them may declare upon the original consideration and recover upon the legal liability ensuing therefrom. *Bank of St. Albans* v. *Farmers & Mechanics' Bank*, 10 Vt., 141 ; *Gilman* v. *Peck*, 11 Vt., 516 ; *Torrey* v. *Baxter*, 13 Vt., 452 ; *Merkle* v. *Hatfield*, 2 Johns., 455.

In the case last cited, Judge KENT says that a promissory note and a bank note are equally promissory notes for the payment of money, and that there is no presumption that the receiver takes upon himself the risk of forgery. In *Hughes* v. *Wheeler*, 8 Cowen, 77, it was held that where an usurious note was given as a substitute for a valid note, *which was destroyed by the parties*, that an action lay on the original note. So that it is not material to inquire into the circumstances of the delivery of the note in suit to the defendant by Mrs. Goodrich, or what was said or done in connection with it. For in the view we have taken of the case, con-

ceding all that the defendant claimed he had the right to prove, the plaintiff would still be entitled to his judgment. But we have been unable to discover any error in the rulings of the court, in excluding the evidence offered by the defendant. The only ground upon which it can be claimed that the acts or admissions of Mrs. Goodrich could be given in evidence against the plaintiff is, that she was the agent of the plaintiff so as to be competent to bind him by such acts and admissions. We do not think the evidence showed any such agency. Her agency only extended to the performance of certain specific acts, and the admissions sought to be proved were not so connected with the performance of those acts as to make them binding upon her principal. Her authority was special and limited, and when she exceeded that authority, her principal was not bound. *White* v. *Langdon*, 30 Vt., 599 ; *Upham & Clay* v. *Wheelock*, 36 Vt., 27. The exception taken on account of the want of a revenue stamp has not been urged in this court and we treat it as waived.

The judgment of the county court is affirmed.