Thomas J. Welch *vs.* William H. Goodwin.

Suffolk.   Nov. 24, 1876. — July 3, 1877.   Ames, Endicott & Soule,
JJ., absent.

An agent of an undisclosed principal may be treated as the principal.

If a person pays a promissory note through mistake, supposing the signature upon
the note to be his genuine signature, he may, on discovering it to be forged, main-
tain an action to recover back the money paid, if he is not guilty of laches whereby
the situation of the other party is changed to his injury.

The situation of a person, to whom money is paid by mistake on a forged note, is
not changed to his injury by the fact that, on payment, he transfers to the payer a
mortgage which he received as collateral security for the note, and which, with the
note, he took in good faith, supposing the note to be genuine, the mortgage having
been given as security for another note, of which the forged note was a copy.

Contract for money had and received.   The declaration also
alleged that the defendant was the holder of a certain promis-
sory note purporting to be signed by the plaintiff, and payable
to the order of and indorsed by Abraham Jackson, for the sum
of $2000 ; that on July 8, 1875, the plaintiff, supposing the note
to be genuine, and the signature of the maker upon it to be his
own signature, at the request of the defendant and before the
note was due, paid the defendant the full amount of the note,
with interest thereon, namely, the sum of $2053 ; that the note
was not genuine ; that he never signed or executed it ; that his
name signed thereto was a forgery, and not made by him or with
his knowledge or consent ; that, immediately upon his discovery
of this fact, he notified the defendant and demanded repayment
of the sum so paid.   Annexed to the declaration was a copy of
the note, as follows :

" $2000.00.                    Charlestown, March 1st, 1873.

" For value received I, Thomas J. Welch, promise to pay to
Abraham Jackson or order the sum of two thousand dollars in
three years from this date, with interest to be paid semiannually
at the rate of eight per centum per annum.

" In presence of                    Thomas J. Welch.
Wm. T. Canavan.

" Indorsed, Abraham Jackson."

Trial in the Superior Court, before *Gardner*, J., who reported
the case for the determination of this court in substance as fol-
lows :

It appeared that in March, 1873, the plaintiff borrowed of Abraham Jackson the sum of $2000, and gave therefor to Jackson his note, a copy of which is annexed to the declaration, and, as security therefor, a mortgage upon a certain parcel of real estate owned by him, which mortgage was recorded on April 1, 1873; that prior to February, 1875, Jackson was largely in-debted to the Eliot National Bank, of Boston, of which the defendant then was and ever since has been the president; that, among other indebtedness, the bank held a note for $4500 of Jackson's and of the American Steam Safe Company, and others, upon which note the loan of $4500 had been made by the bank; that this note became due in February, 1875, was unpaid and was protested for non-payment; that shortly after, the bank received from Jackson, in payment of the past-due time note, a new note, (the old note being retained by the bank,) with Jackson's name alone on it, for the sum of $4500 on demand made by Jackson, payable to the bank, and, together therewith, certain collateral security, the demand note, with the collateral, being received as a substitute for the old security; that the collateral consisted of three mortgage notes, together with the assignments of the mortgages, one of which notes and assignments was a note, a copy of which is annexed to the declaration, and an assignment of the mortgage of the plaintiff to Jackson; that the assignment of the mortgage was not made upon the original mortgage deed, but was a separate instrument, and was from Jackson to the defendant by name " as trustee," but the nature of the trust was not set forth in the instrument; that this assignment was executed on February 23, 1875, and recorded at the Registry of Deeds in Middlesex, Southern District, on February 23, 1875, and in the Suffolk Registry of Deeds, on March 10, 1875; and that, at the time that these notes and assignments were received by the bank, it was agreed between the bank and Jackson, that, in case the bank should receive upon the collateral more than sufficient to satisfy the $4500 demand note, the balance should be retained and credited towards satisfying whatever other indebtedness there might remain from Jackson to the bank.

It also appeared that the bank realized upon the whole of the collateral security, and obtained therefrom, including the $2053

hereafter mentioned, paid by the plaintiff, more than enough to pay the $4500 demand note, with interest, and that the balance was duly credited towards satisfying the remaining indebtedness of Jackson ; that Jackson was still a large debtor to the bank ; and that, in case the bank should repay the $2053 paid by the plaintiff, the amount realized from the whole of the collateral would not be enough to satisfy and pay the $4500 demand note. This evidence was objected to as immaterial; but by agreement of counsel it was admitted *de bene*, and the judge reserved the matters of law arising thereon for the determination of this court. It was not admitted as bearing upon any of the questions submitted to the jury.

It also appeared, and was uncontested, that a petition in bankruptcy was filed against Jackson on May 28, 1875, and that he was duly adjudicated a bankrupt thereon.

The plaintiff proved that prior to February, 1875, and on March 18, 1873, Jackson made an assignment of the plaintiff's mortgage to the Franklin Insurance Company, and therewith a note, a copy of which is annexed to the declaration ; that this assignment was not upon the original mortgage deed, but was a separate instrument, and that said assignment was not recorded until April 23, 1875 ; that, in the spring of 1875, hearing that Jackson had committed forgeries, the plaintiff desired to know what had become of his mortgage note ; that he thereupon went to the registry of deeds at Cambridge, and got the register to look at the records, and was told by him that the mortgage had been assigned to William H. Goodwin ; and he testified that nothing was said to him by the register about the word "trustee ;" that he thereupon called upon the defendant at the bank, and had several interviews at the bank with him, which resulted on July 8, 1875, which was more than seven months before his note became due, in his paying to Goodwin the sum of $2053, being the amount of his mortgage note, and the interest due thereon and unpaid ; that the paper purporting to be his mortgage note, being the one received from Jackson by the bank, was thereupon surrendered up to him, and that thereupon a friend who was with him, and in his presence and in the presence of the president and cashier of the bank, scratched with pen and ink the name "Thomas J. Welch" signed to the note

that he directly went with the defendant to the registry of deeds, where the defendant, by a deed as trustee, released to him the mortgage made to Jackson, and that the release was thereupon immediately recorded at the said registry; that he thereafter, and on the same day, in conversation with friends and at their suggestion, tore the name of "Thomas J. Welch" off from the note, and destroyed that portion of the paper upon which it was written; that about July 26, 1875, he was led to suspect that the Franklin Insurance Company held a note purporting to be his mortgage note, and an assignment of the mortgage; that he called at the office of the company, and was there shown a note passed by Jackson to that company, which he then and there recognized to be the genuine mortgage note, and was also shown an assignment of the mortgage; that he never made but one note in his life; that he immediately consulted counsel, who, on July 28, 1875, gave to the defendant the notice, a copy of which is printed in the margin; * that, at the time he paid the $2053, he supposed and understood the note he then took up to be his genuine note, and always so supposed until he saw the note held by the Franklin Insurance Company; that the defendant never notified him that he was acting in the transaction other than personally, and that he did not know that it was a bank transaction; and that, after his first call upon the defendant, he received two letters, which he had since lost, requesting him to call again; that he could not swear certainly, but was very positive that these letters were signed in the defendant's name, and that there was nothing contained therein indicative of the matter being an affair of the bank. A witness called by the plaintiff, who came with him to the bank when the money was paid, testified that it was paid into the defendant's hands.

---

* "Boston, July 28, 1875.
" Wm. H. Goodwin, Esq.

" Dear Sir: We are instructed by Mr. Thomas J. Welch to inform you that he finds his signature on the note for $2000, dated March 12, 1873, and paid to you July 8, to have been forged, and that the genuine mortgage note is held by the Franklin Insurance Company. Accordingly he requests you to repay the amount of his payment, viz. $2053.

" Respectfully yours,
" Morse, Stone & Greenough."

The defendant introduced evidence that the $2053 was paid by the plaintiff into the hands of the cashier of the bank, and not into his hands; that the defendant never wrote to the plaintiff, but that the two letters received by the plaintiff were written upon paper upon the top of which was printed "Eliot National Bank. W. H. Goodwin, president; R. B. Conant, cashier;" and that both letters were written by the cashier, signed by him in his name, with the word "cashier" added, and that they referred to the matter as an affair of the bank, and stated that the bank held the assignment. The defendant proved that the money paid by the plaintiff was immediately credited to Jackson's account on the books of the bank, and was immediately placed with the other funds of the bank; that the note paid by the plaintiff was always kept by the bank together with its other securities, and was in charge of the cashier; that when the plaintiff paid the money, the defendant had no knowledge or suspicion of this note being a forgery, and no knowledge or suspicion of the existence of another note or of another assignment of the mortgage, and never had any knowledge or suspicion of either of these things. The defendant also testified that he did not recollect distinctly, but thought that at one of the interviews with the plaintiff, before the money was paid him, he exhibited to him the assignment from Jackson to himself as "trustee," which, however, the plaintiff denied, and said that he did not suppose that he had personally anything to do with the matter, but considered it a bank transaction, and that in all that he did he was acting in his capacity as president of the bank; that neither of the two letters received by the plaintiff mentioned the fact that the bank held the assignment, and that his object in the beginning in having the plaintiff call was to pay the interest due on the note.

The plaintiff introduced evidence tending to show that the note paid by him, and purporting to be witnessed by a clerk of Jackson, was a forgery, and that it was forged by Jackson; and that the note held by the Franklin Insurance Company was a genuine note. There was no other evidence in the case which was material. At the conclusion of the evidence, the defendant asked the judge to rule that the plaintiff could not maintain this action. The defendant contended that the action, if maintain

able against anybody, should have been brought against the
Eliot National Bank ; that the action, if otherwise maintainable
against the defendant, could not be maintained merely on proof
of the note paid by the plaintiff being a forgery, and on proof
of the notice of July 28, 1875, and on proof that he gave that
notice within a day after going to the Franklin Insurance Com-
pany's office ; that, as it appeared that the transaction of the
bank with Jackson was *bonâ fide*, Jackson had thus parted with
a title good as to the Franklin Insurance Company and the plain-
tiff, and that thus the bank was damaged by the release to the
plaintiff of this mortgage ; and that the notice of July 28, 1875,
was not seasonable.

 The judge declined so to rule, but stated that all the questions
of law arising in the case should be reported to this court, and
fully instructed the jury that if the plaintiff proved the facts
stated in his declaration, he was entitled to recover ; that the
first question was whether the note was a forged note ; that if
the jury found it to be a forged note, the plaintiff was entitled
to recover, provided that he was not informed of the forgery of
the note until the day or day before he went to counsel, and that
in such case the notice of July 28, 1875, would be seasonable
notice, and provided that the defendant did not disclose to him
the fact that he was not acting as principal in the transaction,
and the plaintiff did not know at the time of the payment of
the money to the defendant that the defendant was acting for
the bank.

The jury returned a verdict for the plaintiff for $2053 ; and
the judge reported the case for the determination of this court.

If the court should find upon this report that the action was
maintainable, if at all, only against the bank, or that the notice
was not seasonable so as to entitle the plaintiff to recover, or that
the plaintiff could not, under the circumstances herein stated,
maintain his action on proof of the note being a forgery and the
note held by the Franklin Insurance Company genuine, and
proof that the defendant did not disclose to the plaintiff the fact
that he was acting as principal in the transaction, judgment was
to be entered for the defendant ; and in case the court should
not so find in either particular as matter of law, but should find
that the instructions to the jury were not conformable to the

requirements of the case, the verdict was to be set aside and a new trial ordered.

*R. R. Bishop & F. Goodwin*, for the defendant.

*R. M. Morse, Jr. & C. P. Greenough*, for the plaintiff.

LORD, J   This case differs from that of *Carpenter* v. *Northborough National Bank*, ante, 66, in two particulars only. The payment was received by the defendant in this case as the agent of another party. The instructions of the presiding judge on that subject were correct. One who acts as the agent of an un-disclosed principal may be treated as principal by the party with whom he deals.

The other particular, in which the case differs from that of *Carpenter* v. *Northborough National Bank*, is that the forgery, by means of which Jackson accomplished the fraud, was that of the name of the plaintiff himself; and the only question is, whether that fact of itself is an absolute bar to the right of the plaintiff to recover. We do not understand that any other question than this was presented to the mind of the judge who presided at the trial. If any other questions were presented, it is to be presumed that proper instructions were given in reference thereto, and that the jury were required to make the proper distinction and discrimination between the payment upon a note, the forged signature to which was that of the payer, and not that of another party to the contract.

It may well be held that a banking corporation, which issues notes as currency, upon such plates and with such securities as it deems sufficient, may be, from reasons of public policy, estopped to deny the genuineness of notes which it has redeemed as its own, while such considerations would have no bearing upon the question whether an individual should be permitted to show that a signature which he had treated as his own was, in fact, a forgery. Nor is it necessary in this case to go so far as to say, as was held by a majority of the court in *National Bank of North America* v. *Bangs*, 106 Mass. 441, that a bank may recover money paid upon the forged check of one of its depositors. In both those classes of cases, entirely different considerations may properly enter.

The question which we are called upon to decide is, whether, under any circumstances, a party may recover back money paid

upon a security bearing a forged signature of himself, supposing it, at the time of payment, to be his own genuine signature. We can have no doubt that he may. This is entirely clear in case he was induced to make the payment by fraud or misrepresentation. Nor is it necessary that fraud or misrepresentation should exist. An innocent mistake, whether arising from natural or temporary infirmity or otherwise, made without fault upon his part, entitles him to the same relief. How far this right would be affected by neglect upon his part to give prompt notice of the mistake, or by any change affecting the situation or rights of the person to whom the payment is made, we are not called upon to consider. Here notice was given immediately upon discovering the forgery. Whatever securities were given up by the defendant, in consideration of the receipt of the forged note, had been given up before the payment was made. The discharge of the mortgage by Goodwin was the release of no substantial right. If Goodwin received any title to the mortgage or mortgaged premises by reason of the assignment to him, he received it in trust for another, and in no event for his own benefit. His discharge of it was therefore no injury in law to him. By the facts as they appear in the report, his discharge of the mortgage effected nothing except what by law or in equity he would be compelled to do. There is no reason, therefore, why the plaintiff should not recover; and there must be                         *Judgment on the verdict.*