THE SANDY RIVER NATIONAL BANK OF FARMINGTON *vs.* GILBERT MILLER.

Franklin.    Opinion November 19, 1889.

*Promissory note. Forgery. Principal and surety. Laches. Discharge.*

When a note, signed by a principal and surety, is delivered up to the principal by the bank which discounted it on receipt of a new note on which the same surety's name is forged by the principal, the original thus surrendered cannot be deemed to be paid.

But when the surety is not notified of the forgery for nearly three months thereafter, and no demand on him is made for several days after that, an action against the surety on the original note will not be sustained unless it clearly appears that the unreasonable delay will not prejudice his legal interests.

ON REPORT.

This was an action of assumpsit upon a joint and several note for $1,000, dated March 24, 1888, and signed by G. W. Russell, as principal, and by the defendant and one Jacob B. Holmes, as sureties.

Besides pleading the general issue, the defendant filed a brief statement of special matter of defense:—That the note had been paid before the commencement of the action; that the plaintiffs were estopped from denying payment of the same, and defendant was relieved therefrom; and that the note was cancelled and discharged before the commencement of the action. The plaintiff filed a counter brief statement: That the note declared on has never been paid; that a forged note was presented by the principal of said note in renewal of the note in suit; and plaintiffs being deceived by the false representations of said principal and relying upon such representations and believing the signatures of such note were genuine, cancelled and delivered up the note in suit to Geo. W. Russell, the said principal, and received such note offered in renewal in lieu of the note in suit; that in fact and truth the signatures of the sureties of the note offered and accepted in renewal were not genuine, but were false, counterfeit and forged; and that the note in suit was not and has never been paid by said principal, by the sureties, or by either of them.

The following facts were agreed on the part of the plaintiffs:—

First:—That the plaintiffs have been in the habit of discounting notes for Russell upon which Miller's name appeared as surety.

Second:—That one of such notes of $1200, was discounted August 13th, 1887.

Third:—That one such note for $1200, in renewal of the preceding note, dated November 14, 1887, was discounted by plaintiffs December 13, 1887.

Fourth:—That one for $1000, was discounted by plaintiffs March 9, 1888.

Fifth:—That the note declared on in the plaintiffs' writ is for $1000, dated March 24, 1888, and was discounted by plaintiffs March 26, 1888, and that $500, was indorsed on this note at the date of discount.

Sixth:—That on July 9, 1888, said Russell presented a note to said bank for discount for $1200, dated July 9, 1888, and signed by G. W. Russell as principal, and purporting to be signed by said Gilbert Miller, the defendant, and J. B. Holmes, as sureties.

Seventh:—That plaintiffs in accordance with the request of said Russell for the note last described, gave up to him the note dated March 24, 1888, being the one described in the writ, and paid him in cash, $674.24 which, with the interest due on the note sued and the discount of the note last described, was the full face of said note, to wit: twelve hundred dollars.

Eighth:—That subsequently, to wit: November 2, 1888, the plaintiffs had reason to suspect that the signatures of the said Miller and Holmes on said last named note, to wit : the note for $1200, dated July 9, 1888, were forgeries, and on the next day, November 3, 1888, they communicated their suspicions to said Miller and said Holmes and were informed by them that they did not sign or authorize their names to be signed to said note.

Ninth:—That their signatures on said note are forgeries.

Tenth:—That the note declared on in the plaintiffs' writ has never been paid, except $500, as appears by the indorsement thereon, and that the forged note was accepted by the plaintiffs with the full belief and understanding that the signatures of Miller and Holmes thereto were genuine.

Eleventh:—That the signature of the defendant upon the note declared upon is genuine.

The following facts were agreed on the part of the defendants :

First:—It is admitted that after the plaintiffs had personal knowledge of the forged note they took an assignment of certain claims of said Russell against certain insurance companies.

Second:—It is admitted that Russell took the note declared

upon in this suit after it was delivered to him by the bank July 9, 1888, to the defendant and that the defendant erased his name from said note, as appears by said note, and that after he had erased his name to the same he returned it to Russell to be delivered to J. B. Holmes.

Third:—It is admitted that the officers of the Sandy River National Bank procured a warrant against said Russell for the forgery of the $1200 note dated July 9, 1888, on the third day of November, 1888, and that subsequently, to wit: November 24, 1888, said Russell delivered up to said bank the note declared upon in this action at the request of the bank officers.

Fourth:—It is admitted that when the note declared upon was given up to Russell on the date that the forged note was discounted for him by the bank, the bank put on the note the stamp of the bank, which signified that the note was paid.

Fifth:—It is admitted that the first notice received by Mr. Miller, the defendant, that said note was in the hands of the bank officers claiming that it was not paid was by letter from the attorney of the bank to him, dated December 7, 1888, mailed on the same date and received by Miller on December 8, 1888.

The other material facts appear in the opinion.

*S. Clifford Belcher*, for the plaintiffs.

A negotiable note given for a simple contract debt is *prima facie* payment of such debt. This presumption may be rebutted and controlled by evidence that such was not the intention of the parties. Thus it has been held that where a note is taken in ignorance of the facts, the presumption that it was taken in payment is rebutted. *Bunker* v. *Barron*, 79 Maine, 62 and cases cited; *Stratton* v. *McMakin*, 84 Ky. 641; S. C. 4 Am. St. Rep. 215. Money paid under a mistake of fact may be recovered back. If a valid instrument be surrendered up, and one that is forged given in place thereof, it will constitute no valid payment. 2 Daniel on Neg. Insts. [ed. 1876], § 1369. 2 Greenl. Ev. 523; *Young* v. *Adams*, 6 Mass. 182; *Markle* v. *Hatfield*, 2 Johnson 455; *Bank of United States* v. *Bank of Georgia*, 10 Wheat. 333. In this case the court approved the cases of *Young* v. *Adams* and *Markle* v. *Hatfield*, above cited. *Johnson* v. *Johnson*, 11

Mass. 359; *Ramsdell* v. *Soule*, 12 Pick. 126. In *Eagle Bank* v. *Smith*, 5 Conn. 71, the court say: "A forged note, or dishonored draft, if delivered in payment, is no satisfaction or extinguishment of an antecedent demand; and for the most just and obvious reasons. They are of no value; and not what they were, either expressly or impliedly, affirmed to be by the person delivering them as payment, or believed to be by him who accepted them as such." *Goodrich* v. *Tracy*, 43 Vt. 314; *Allen* v. *Sharpe*, 37 Ind. 67, are cases very similar to the one at bar. *Ritter* v. *Singmaster*, 73 Pa. St. 400; *Stratton* v. *McMakin*, 84 Ky. 641; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287.

The demand for payment or restitution may be made within a reasonable time after the forgery is discovered, and the mere space of time is not important, unless the lapse of time is detrimental to the party of whom payment or restitution is demanded. Daniel on Neg. Insts. § 1372, and cases cited; *Boyd* v. *Mexico Southern Bank*, 67 Mo. 537.

In this case the forgery was discovered Nov. 3, 1888. Demand of payment made on defendant, Dec. 8, 1888.

The defendant was not placed in any worse condition by the delay. He gave up no security, that he already had, on account of the supposed payment.

The evidence shows that Russell was insolvent ever after the forged note was uttered; and he actually went into insolvency within less than thirty days after the discovery of the forgery.

The defendant, therefore, could not have secured himself at any time after the forged note was delivered to the plaintiffs.

*H. L. Whitcomb and J. C. Holman*, for defendant.

Surety was exonerated. *Baker* v. *Briggs*, 8 Pick. 122; *Guild* v. *Butler*, 127 Mass. 386; *Bank* v. *Baker*, 4 Met. 164; *Pitts* v. *Congdon*, 2 N. Y. Court of Appeals, 352.

Action cannot be maintained without restoring the $1200 note. *Perley* v. *Balch*, 23 Pick. 283; *Kent* v. *Bornstein*, 12 Allen, 342; *Estabrook* v. *Swett*, 116 Mass. 303; *Conner* v. *Henderson*, 15 Mass. 319. There should be a rescission, *in toto*. *Coolidge* v. *Brigham*, 1 Met. 547.

When one of two parties, neither of whom has acted dishon-

estly, must suffer, he shall suffer who, by his own act, has occasioned the confidence and consequent injury of the other. *Isnard* v. *Terres,* 10 La. An. 103; Bigelow, Notes and Bills, p. 547. Bank took security after knowing the forgery. Did not use diligence in finding out forgery. Have made the note their own by laches; 1 Edwards, Bills and Notes, § 276, *Levy* v. *Bank of U. S.,* 4 Dall. 234, S. C. 1 Binn. 27.

The bank knew the signature of the parties to the forged note. They had the genuine signature. They gave up the genuine note. It was cancelled by this defendant. The principal carried the genuine note,—the note in suit,—to this defendant and he erased his name from it and gave it back to him to pass to the other surety. Weeks after, it is returned to the president of the bank by the forger after the bank had sworn out and held a warrant against him, with the understanding that the bank would write the word "paid" across the face of the note; and then the bank brings this action upon the note. Principles of public policy demand that the plaintiff should not prevail.

VIRGIN, J. Assumpsit on a joint and several promissory note for $1000, dated March 24, 1888, payable to the plaintiff or order in ninety days, signed by one Russell as principal and by one Holmes and this defendant as sureties; which note the plaintiff discounted on March 26, when $500 were indorsed thereon, thus making it practically a note for $500.

Shortly after the note matured, to wit, on July 9, 1888, Russell presented to the plaintiff for discount a note of that date, for $1200, payable to the plaintiff or order in four months, signed by Russell as principal and purporting to be signed by Holmes and this defendant as sureties; whereupon the bank, at the request of Russell, with full belief that the signatures of the sureties were genuine, gave up to him the note in suit bearing thereon the bank's stamp of having been paid, and paid him in cash the balance after deducting the amount of the note in suit and the discount of that of July 9.

Thereupon, Russell took the note in suit to the defendant, who drew a line through his signature and returned it to Russell, who took it to the other surety for a like purpose.

The signatures of the sureties on the note of July 9, were forged.

If these were all the facts in the case this action might be maintained. For the general rule of law is clear and undisputed, that money paid by mistake of fact may be recovered back; and this general rule applies where a new note is given in payment of another and the former is void for any reason and especially when the signatures of the new note are forged. In such case the new note being worthless it does not operate as an extinguishment or payment of the original. *Robinson* v. *Bland,* 2 Burr. 1077; *Bell* v. *Buckley,* 11 Exch. 631; *Baxter* v. *Duren,* 29 Maine, 434, 440; *Hussey* v. *Sibley,* 66 Maine, 192; *Ritter* v. *Singmaster,* 73 Pa. St. 400. And the action may be maintained on the original. *Eagle Bank* v. *Smith,* 5 Conn. 71; *Goodrich* v. *Tracy,* 43 Vt. 314.

This general rule, however, like most others, is vexed with one or more exceptions; one of which is that, money cannot be thus recovered back where restitution cannot be made without legal prejudice to some other party affected by the mistake. *Williamson* v. *Johnson,* 3 Barn. & Cr. 428, 434; *Mer. Nat. Bank* v. *Nat. Eagle Bank,* 101 Mass. 281; *Welch* v. *Goodwin,* 123 Mass. 71; *Nat. Bank of Commerce* v. *Nat. M. B. Asso.,* 55 N. Y. 211. Or applying the rule to the case at bar: The plaintiff cannot be permitted to maintain an action on the note which was once marked paid and delivered up, if by reason of the laches of the plaintiff in the premises, the defendant has lost the opportunity of securing or indemnifying himself against his principal. *Baker* v. *Briggs,* 8 Pick. 122, 131. It is evident that mere negligence in making the mistake is not sufficient to preclude the plaintiff who made it from demanding its correction; for such negligence should not warrant the defendant in retaining the benefits of the mistake, unless his circumstances have been thereby so changed as to render it unjust and prejudicial to his legal interests. *Nat. Bank of Com.* v. *Nat. M. B. Asso., supra*; *Lawrence* v. *Am. Nat. Bank,* 54 N. Y. 433.

To be sure, it was the duty of the plaintiff to exercise due diligence in discovering the forgery and notify the defendant

thereof, to the end that he might if possible save himself from the natural consequences of the mistake. The early English cases narrowed down the delay of discovery and notice to a very short space of time. But no abstract rule as to the time which, in all cases, will preserve the right of correcting the mistake,—except the one of reasonable time,—can be laid down. Each case has its own peculiar circumstances. In cases where notice to prior indorsers is involved and some others found in the books, the time may be very short. But the common sense doctrine of modern decisions seems to be that, while notice of the forgery and demand for restitution or correction should be made within a reasonable time, still the mere space of time is not necessarily an important factor, so long as it shall clearly appear that the defendant will in nowise be legally damnified by the correction of the mistake.     2 Dan. Neg. Instr. § 1372, and cases cited; *Allen* v. *Fourth Nat. Bank*, 64 N. Y, 12.

The plaintiff is a small bank in a flourishing country village. The forged note was received by it July 9. Its officers had at the same time the genuine note before them with the same names thereon. It had been in the habit for more than a year of discounting similar notes for its customer Russell, with the defendant's name thereon. When the officers first discovered the forgery does not affirmatively appear, although the case finds that they suspected it on November 2,—four months less seven days after it was received,—and had their suspicions confirmed the next day by the defendant. While, perhaps, the defendant cannot strictly speaking be considered the bank's customer, whose signature they were bound to know, still in the absence of any explanatory circumstances, it is difficult to understand how the new note could have thus passed the inspection of the officers of the bank with such facilities for detection before them, and have slumbered in its files so long and the forgery remain undiscovered for such a length of time. It seems to us unreasonable.

But conceding that delay in the abstract cannot deprive the plaintiff of recovery: We do not think it clearly appears that the correction of the mistake after such a long delay will not injure the defendant; but that on the contrary if he had been

seasonably notified of the forgery and demand made on him to pay the note, he possibly might have obtained payment or indemnity from Russell. On July 9, when the forged note was received by the bank, Russell had property in his hands valued at over $14,000. After that date he paid out $3,800. To be sure, his creditors put him into insolvency on November 27, following; but if he had known of the mistake within fifteen days after it occurred, he might have obtained indemnity from Russell which his insolvency could not have affected.

Moreover, on November 3, the bank took from Russell a mortgage of insurance policies amounting to $4,000 on which his estate realized $3,600 and on the 24th of November wrote "paid" across the face of the note and did not demand payment of the defendant until December 8.

Under these circumstances,—the negligent delay on the part of the bank and the possible injury to the legal interests of the defendant, we are of opinion that there should be

*Judgment for defendant.*

PETERS, C. J., WALTON, FOSTER and HASKELL, JJ., concurred.