BANK OF ST. ALBANS *v.* FARMERS & MECHANICS BANK.

FRANKLIN,
*January,*
1838.

Where a forged check, purporting to be drawn by a customer on a bank, where such customer keeps a deposit, is paid at such bank to an innocent holder, who paid a valuable consideration for it, and who had no knowledge of the forgery, such bank cannot recover of such holder the amount so paid.

If such check is purchased by another bank, in good faith, and is received in the course of business by the drawee, and passed to the credit of the bank that purchased it, and notice of the forgery is not given the bank so purchasing it, until two months afterwards—the bank, on which the check purported to have been drawn, thereby makes the loss its own.

In such a case, notice of the forgery should be immediately given, to entitle the drawee to a recovery.

ASSUMPSIT, for money had and received, and for money lent. Plea—Non assumpsit, and trial by jury.

On the trial of the cause in the county court, the plaintiffs, to sustain the issue on their part, gave in evidence a check, dated Feb. 18, 1836, drawn upon them, and in favor of James Wilson or bearer, for seven hundred dollars, purporting to have been signed by N. W. Kingman, which was endorsed as follows ; " Pay to T. Hockley, cash'r, or order, James Wilson." " Credit Farmers and Mechanics Bank, T. Hockley, cash'r."

The plaintiffs also introduced evidence tending to prove that the check was a forged one. Henry Wells, teller in the Bank of St. Albans, testified that the check was received at said Bank, on the 23d or 24th day of February, 1836, in a letter from Thomas Hockley, cashier of the Farmers & Mechanics Bank ; that an open account then existed between said banks, and that on the receipt of the check, the amount of it was credited to the defendants in the plaintiffs' books, where the credit still remained ; that, at the same time, the amount of the check was charged to said Kingman, who was then the president of the Bank of St. Albans ; that afterwards, on the 28th day of April, 1836, the cashier of said Bank examined the accounts of their customers, and said check was then, for the first time, presented to said Kingman, as a voucher to support the balance appearing against him ; that said Kingman denied having ever given the check, and refused to allow it ; that said examination was a stated or periodical one, according to the custom of the bank.

The plaintiffs also offered in evidence the letter from said

FRANKLIN,
January,
1838.

Bank of
St. Albans
v.
Farmers &
Mech's Bank.

Hockley to A. Houghton, cashier of the Bank of St. Albans, enclosing the check, which was dated February 22, 1836.

C. F. Warner was also called, as a witness, who testified, that at the time of the purchase of the check in question, he was teller in the Farmers & Mechanics Bank; that the check was presented to said Hockley, at said last mentioned bank, by a man calling himself James Wilson, who professed to be engaged in lumbering, in the state of New York, and who stated that he wanted the money for the check, to pay out, in the course of his business, to laborers and others; that said Hockley purchased the check of him, and the seller endorsed it "James Wilson;" that on the same day of the purchase, and before the check was sent to the bank of St. Albans, the said Hockley remarked to witness, that he thought it improper to purchase checks of an entire stranger; that this was the first instance, in which he had done so, and he hoped it would be the last.

The said Warner further testified, that, on the 29th day of April, 1836, Mr. Houghton, the cashier of the St. Albans Bank, presented the check at the Farmers & Mechanics Bank, with the letter of said Hockley, before mentioned, and gave notice of the forgery to the defendants, and informed them that he considered the credit in the plaintiffs' books, as well as the charge in the defendants' books, founded on said check, void, and demanded of the defendants payment of the amount of the check.

Upon this evidence, the plaintiffs contended, and requested the court below to charge the jury;—that if they found that the said Hockley received the check, without due circumspection, or the exercise of due diligence in ascertaining its genuineness, or the title of the person presenting it, the plaintiffs were entitled to recover; that if he received it under suspicious circumstances, and at any time before transmitting it to the plaintiffs, doubted its genuineness, or the title of the person presenting it, he was bound to communicate his suspicions to the plaintiffs, with an account of the circumstances, under which it was received; that the defendants' remedy against Wilson, the endorser, ought to render them liable to the plaintiffs, and that the acceptance and payment of the check, by the plaintiffs, did not preclude them from recovering the amount of it in this action. But the court

instructed the jury that their verdict should depend upon the question, whether, at the time of receiving and paying for the check, Hockley either knew or suspected that it was not genuine ; and if they found that he had such knowledge or suspicion, *at that time*, the plaintiffs were entitled to recover ; but that a mere suspicion, afterwards entertained, and not suggested by any new facts, would not affect the rights of the defendants, arising out of the subsequent acceptance and payment of the check by the plaintiffs, nor was Hockley bound, provided he purchased the check in good faith, to communicate to the plaintiffs, either the circumstances under which he received it, or his after-conceived suspicions of it. The jury returned a verdict for the defendants, and the plaintiffs excepted.

<div style="float:right">FRANKLIN,
January,
1838.
——
Bank of
St. Albans
*v.*
Farmers &
Mech's Bank.</div>

*Smith & Aldis*, for plaintiffs.

1. It is a general rule of law, that payments in forged paper or coin, are to be treated as nullities. *Markle* v. *Hatfield*, 2 Johns. R. 455. *Young* v. *Adams*, 6 Mass. R. 182. *Bank of U. S.* v. *Bank of Georgia*, 6 U. S. Cond. R. 120.

To this general rule, the defendants would raise an exception, viz. that acceptance or payment, by drawee, precludes him from showing the signature of the drawer to be forged. The authorities, which are brought to sustain this position (with one exception, *Levy* v. *Bank U. S.*) do not stand upon the ground that the drawee must be presumed to take on himself the knowledge of his correspondent's hand-writing, but assume that acceptance gives a credit to the bill or check, upon which the subsequent holder, who receives it in the course of its circulation, relies. The case 6 Pet. Cond. R. 120, is where one pays his own note,—as if Kingman had paid this check.

Many of the other cases turn upon negligence in the acceptor,—as *Price* v. *Neale*, and *Smith* v. *Mercer*, 6 Taunt. 1 T. R. 655, is a mere *dictum*. *Wilkinson* v. *Lutridge*, 1 Str. 648, and *Cooper* v. *Le Blanc*, 2 Str. 1050, are direct authorities, that the acceptor may show forgery of drawer's signature.

2. The doctrine, if not supported by authority, cannot be supported by reason.

The idea, that the drawee's acquaintance with his correspondent's hand-writing enables him to judge with so much

FRANKLIN,
January,
1838.

Bank of
St. Albans
v.
Farmers &
Mech's Bank.

certainty of its genuineness, that he ought not afterwards to be permitted to dispute it, is not founded in reason.

3. Hockley, by his directions on the back of the check, gave a credit to it upon which the plaintiffs relied.

4. The defendants have a remedy against Wilson, their endorser, but plaintiffs have not, on account of Hockley's mode of transfer to them.

*Smalley & Adams*, for defendants.

1. The plaintiffs were bound to know the signature of their customer, the apparent drawer of the check, and, by accepting and paying it to defendants, are precluded from questioning its genuineness, so far as they are concerned. *Wilkinson* v. *Lutridge*, 1 Strange 648. *Jenys* v. *Fawler*, 2 Str. 946. *Price* v. *Neal*, 3 Burr. 135½. 4

The correctness of the doctrine, in the case of *Price* v. *Neal*, was recognized by Mr. J. Buller, in *Smith* v. *Chester*, 1 T. R. 655 ; by Lord Kenyon, in *Barber* v. *Gengill*, 3 Esp. R. 60, and by Dampier, J., in *Bass* v. *Cline*, 4 M. & S. 15, and was acted upon by the court in *Smith* v. *Miner*, 1 C. L. R. *Levy* v. *Bank*, *U. S.* 4 Dallas 234, and, 1 Binney, 27. *Bank of U. S.* v. *Bank of Georgia*, 6 U. S. Cond. R. 120. S. C. 10 Wheat. 333.

2. There was negligence on the part of the plaintiffs, in not giving seasonable notice to defendants, of the spuriousness of the check, which alone would exonerate the latter from all liability. *Bank of Gloucester* v. *Bank of Salem*, 17 Mass. 33. *East India Co.* v. *Fulton and Others*, 10 C. L. R. 79.

The opinion of the Court was delivered by

PHELPS, J.—I am for myself fully satisfied, from the cases of *Bree* v. *Holbech*, Doug. 654, and *Price* v. *Neal*, Burr. 1354, that Lord Mansfield entertained the opinion, that there was no remedy against a person, who should innocently put off a forged security, but that, to enable the receiver to maintain an action in such case, something like fraud or *mala fides* must appear, or at least some culpable negligence on the part of the person putting off the security. He seems to have held, that if both parties are equally innocent, there is no ground in equity for transferring the loss, from one to the other.

It must, however, be admitted, at this day, that such is not

the law ; but on the contrary, it seems now well settled, that FRANKLIN, January, 1838.

Bank of St. Albans v. Farmers & Mech's Bank. a person giving a security in payment, or procuring it to be discounted, vouches for its genuineness. This rule, however, has never, to our knowledge, been extended to the case, where the party, when receiving or discounting the paper, is presumed, from his rel⬛⬛⬛ to have the means of correct knowledge as to its ge⬛⬛⬛or where it has been kept for an unreasonable tim⬛⬛⬛out notice to the other party of its spurious character. The acceptor of a bill is holden to pay it, although the name of the drawer may be forged ; and it is for this reason, that, in an action against him, the hand-writing of the drawer need not be proved.

The case, of *Price* v. *Neal* is now understood to have proceeded upon the ground, that the drawee is bound to know the hand-writing of his correspondent, and, thus understood, its authority has never been questioned. It has often been commented upon, both in the English courts and those of this country, and, although its applicability to a transfer of a forged security, between persons not parties to it, has been questioned, yet, its authority, as applied to the case of such a bill, accepted or paid by the drawee, has been uniformly and fully sustained. That the rule there adopted extends as well to the case of a bill paid upon presentment, as to one, accepted and afterwards circulated, appears, not only from the case itself, but from subsequent decisions, in which the case itself has been approved, and its principle adopted.

There is good reason for the distinction, upon which the authority of that case rests, to be found in the intrinsic character of the transaction itself, ↙ The presentment of a bill to the drawee is a direct appeal to him to sanction or repudiate it. It is an inquiry as to its genuineness, addressed to the party, who, of all men, is supposed best able to answer it, and whose decision is most satisfactory. He is, moreover, the person, to whom the bill itself points, as the legitimate source of information to others, and if he were permitted to dishonor a bill, after having once honored it, the very foundation of confidence in commercial paper would be shaken. There is a wide difference between such a transaction, and the passing of paper as a representative of money, between persons equally strangers to it, in the ordinary course of busi-

Franklin,
January,
1838.

Bank of
St. Albans
v.
Farmers &
Mech's Bank.

ness. In the latter case, the receiver relies, in a measure, upon the paper, while in the former, the case is reversed, and the holder relies, and has a right to rely, upon the decision of him, to whom the bill is addressed, and who alone is to determine whether it shall be honored or not.

The same rule holds as to cks, or bank notes, and for precisely the same reaso his point I deem it unnecessary to cite authority. cases are collected and reviewed by Mr. Justice Story, in the case of the *Bank of the United States* v. *Bank of Georgia*, 10 Wheaton 333, to which I may refer as abundantly satisfactory.

What then is this case ? A check upon the Bank of St. Albans, purporting to be drawn by Mr. Kingman, is presented at that Bank, which is accepted and paid. They now seek to recover back the money thus paid, by an action for money had and received, against the defendants, who were the holders of the check, upon the ground that the check is a forgery. If the authority of *Price* v. *Neal* is sustained, there is no longer any question in the case.

I have said that the check was accepted and paid. It was transmitted by the defendants to the plaintiffs, with a direction to credit the amount to the defendants in account. This was done, the check retained by the plaintiffs, and no notice given of the forgery, until more than two months had elapsed, although the two banks are situated within thirty miles of each other.

Upon the authority of the case in Wheaton, we may well treat this as a payment. Indeed the plaintiffs have so treated it, by bringing this action ; and, unless we assume that the check was paid, this action cannot be sustained. The payment, of course, involves an acceptance.

But if it be not a payment, strictly speaking, yet, the detention of the bill for so long a time, together with the credit given in account, are tantamount to an acceptance. At all events, the plaintiffs made the bill their own by this proceeding. If they chose to repudiate the check, they should have done so immediately. It was too late after the lapse of two months, to turn the plaintiffs round to their remedy against their endorser. If we suppose the endorser to be innocent, he certainly was entitled to immediate notice of

the dishonor, and the defendants' remedy against him is lost. If we assume that he was privy to the forgery, and for that reason not entitled to notice, yet, it is impossible to judge of the various contingencies, which, at that late hour, might have rendered a remedy against him unavailing ;. and unless we can pronounce judicially 'that the defendants could, at a future day, command the same facilities for redress, which existed when the check was first-presented, we must pronounce that this unreasonable delay destroys the equity of the plaintiffs' claim.

*Franklin, January, 1838.*

*Bank of St. Albans v. Farmers & Mech's Bank.*

It is certainly true, that, in order to protect the defendants in this view of the case, it should appear that they received the bill in the ordinary course of business, and in good faith. The former of these requisites is inferred as a matter of law, from the statement of the case, and the latter is found by the jury.

An exception, however, is taken to the charge of the court below, and it is insisted that Hockley should have communicated to the plaintiffs his after suspicions of the spurious character of the paper. Whether such was his duty, and whether the jury should have been so instructed, depends much upon the inquiry, whether there were any thing to communicate. It does not appear that any facts, affording rational grounds of suspicion, came to his knowledge, after the purchase of the check. What is termed his suspicion, turns out, on inspection of the case, to be no more than his sense of the risk incurred in making the purchase of a stranger, which he very properly communicated to his clerk. But of what service would a knowledge of this have been to the plaintiffs. Had facts come to his knowledge, which would have benefitted the plaintiffs, there would be ground for the argument that he was bound in good faith to communicate them. Whether, in such case, the omission would have subjected the defendants to this action, is a question, which we are not called upon to decide.

But the case discloses nothing, which could furnish to his mind any substantial ground of suspicion, and nothing which it would have been important to the plaintiffs to know. There was nothing, therefore, which called for a charge on this point, and the question, how far the defendants, or their

FRANKLIN,
January,
1838.
_____
Bank of
St. Albans
v.
Farmers &
Mech's Bank.

agents, were bound to communicate such facts as came to their knowledge, after the purchase, is one not involved in the suit, and which will be seasonably decided, when a case arises which requires it.

The judgment of the County Court is affirmed.