## STATE *v.* ABRAMSON.

### Opinion delivered Jan. 7, 1893.

1. *County court—Fiscal agent of county.*

   Where forged county warrants are paid in discharge of a debt to a county, laches will not be attributed to the county in failing to apprise the payer of the forgery until such time as the county court has had opportunity to examine and pass upon the genuineness of the warrants.

2. *County warrants—Forgery—Laches.*

   Delay for the period of three years after the county court discovered the forgery before apprising the payer thereof constitutes such laches on the part of the county as will debar a subsequent recovery of the debt if the payer was an innocent holder of the warrants, and it does not appear that his right of redress against the person from whom he purchased them had been preserved unimpaired.

Appeal from Monroe Circuit Court in Chancery.

MATTHEW T. SANDERS, Special Judge.

*House & Cantrell* for appellant.

1.   There can be no innocent holder of paper issued by a municipal corporation without power or in violation of law.   In this case the warrant was not only issued without authority, but was absolutely forged.   There is no such thing in law as an innocent holder of a forged warrant.   32 Ark. 620 ; 131 U. S. 162 ; 94 *id.* 255 ; *ib.* 261 ; 10 Wall. 676 ; 7 *id.* 676 ; Dill. Mun. Bonds, sec. 7.   It was appellees' duty to examine and see if the warrant was genuine before receiving it.

2.   The county is not estopped by reason of the laches of her officers.   15 Am. & Eng. Enc. Law, 1211.   The defects in the warrant were patent.   Where the means of detecting a fraud is open to both parties alike, the doctrine of estoppel does not arise.   21 Iowa, 569 ; 3 McLean, 102.   See also 111 U. S. 164 ; 101 *id.* 693 ; 131 *id.* 162.   Conceding that the sheriff was the agent of the county, he had no authority to receive forged warrants in the satisfaction of the judgment.   The satisfaction was an illegal act.   15 Am. Dec. 129, note, p. 130.

*Stephenson & Trieber* for appellees.

1.   The proof fails to show that the sheriff received either of the forged warrants in satisfaction of the judgment.

2.   But if it does, the sheriff and county have been guilty of such laches as to preclude a recovery.   17 Mass. 33 ; 10 Vt. 141 ; 10 Wheat. 340 ; 2 Pars. on Notes and Bills, p. 99, and note K ; 91 U. S. 389.

3.   Counties are exempt from the rule that the rights of the government cannot be affected by the laches of its officers.   56 Am. Dec. 637, and note ; 24 Iowa, 283 ; 95 Am. Dec. 729 and note ; 91 U. S. 389 ; 7 Wall. 675 ; 15 Am. Dec. 129 ; Freeman, Ex. sec. 443.

BATTLE, J.   On the 13th of October, 1883, appellees entered into a bond to the State of Arkansas, in the sum of $2000, conditioned that one Simon Silverman

would appear in the Monroe circuit court, at its March term, 1884, and answer an indictment against him for larceny. Silverman failed to appear according to the condition of the bond, and it was declared forfeited. Thereupon the State of Arkansas, for the use of Monroe county, instituted proceedings and recovered a judgment against the appellees, on the bond, for the $2000. Sometime in December, 1884, and January, 1885, Rudolph Abramson, one of the appellees, paid to the sheriff of Monroe county the amount of the judgment in Monroe county warrants, and the sheriff satisfied the judgment by an entry on the margin of the record, dated the 20th of December, 1884. Among the warrants paid were two for amounts aggregating the sum of $727. Both parties believed them to be genuine, and they were paid as such by the sheriff to the treasurer of Monroe county. On the 8th of July, 1885, the treasurer carried into the Monroe county court a large amount of warrants to be cancelled and filed. Among them were the warrants received by the sheriff from Abramson, and two others, one for $250 and the other for $320. Upon examination, the two received from Abramson and the two last mentioned were discovered by the court to be forgeries. This discovery was made on the 8th of July, 1885. On the 13th of May, 1888, appellant brought this action against appellees to set aside the entry made by the sheriff on the margin of the record and to enforce the collection of the judgment, alleging that the four forged warrants had been received by the sheriff in part satisfaction of the judgment and had been delivered by him to the county treasurer. This suit was the first notice of the forgery given to the appellees. Answering, they said that the warrants received in payment of the judgment were purchased and held by them in the due course of trade, in good faith, and were accepted as genuine by the officers of the county; and that, if any of them, being

forgeries, which they denied, had been returned within a reasonable time, they could have recovered the purchase money paid for the same, but, on account of the delay in giving notice, they were unable to do so. Should appellees be held liable in a sum equal to the amount of the forged warrants received from them by the sheriff?

As a general rule of commercial law, a party who pays a forged instrument, which is negotiable in form and purports to be signed by or drawn upon himself, to an innocent holder for value, after he has had an opportunity to examine it, cannot recall the payment. The reason of the rule is, the party is bound to know his own handwriting in the one case, or that of his customer or correspondent in the other. The law "allows the holder to cast upon him the entire responsibility of determining as to the genuineness of the instrument, and if he fails to discover" that it is a forgery, "imputes to him negligence, and as between him and the innocent holder compels him to suffer the loss." *Cooke* v. *United States*, 91 U. S. 389, 396; *Bank of St. Albans* v. *Farmers & Mechanics Bank*, 10 Vt. 141, 145; *National Park Bank* v. *Ninth National Bank*, 46 N. Y. 77, 80; *Commercial & Farmers National Bank* v. *First National Bank*, 30 Md. 11, 18; *Ellis* v. *Ohio Ins. & Trust Co.* 4 Ohio St. 628, 652; *Bank of U. S.* v. *Bank of Georgia*, 10 Wheat. 333, 342; *Bank of Commerce* v. *Union Bank*, 3 Comst. 230, 234; *Johnston* v. *Bank*, 27 W. Va. 343, 359; 3 Randolph on Commercial Paper, secs. 1486, 1487; 2 Daniel on Negotiable Instruments (4th ed.), sec. 1359; 2 Morse on Banks and Banking (3d ed.), sec. 463. But this rule has been modified in some cases. It has been held by many courts that, in order to entitle the holder to retain money obtained from a drawee by a forgery, "he should be able to maintain that the whole responsibility of determining the validity of the signature was placed upon the drawee, and that the vigilance of the drawee was not lessened,

*1. When county bound by acceptance of forged warrant.*

and that he was not lulled into a false security by any disregard of duty on his own part, or by the failure of any precautions which, from his implied assertion in presenting the" paper "as a sufficient voucher, the drawee had a right to believe he had taken." *First Nat. Bank of Danvers* v. *Salem Bank*, 151 Mass. 280; *Ellis* v. *Ohio Ins. & Trust Co.* 4 Ohio St. 628; *Rouvant* v. *San Antonio National Bank*, 63 Texas, 610; *First Nat. Bank of Quincy* v. *Ricker*, 71 Ill. 439; *Gloucester Bank* v. *Salem Bank*, 17 Mass. 33; *Bank of Commerce* v. *Union Bank*, 3 Comst. 230, 234, 236; *State Nat. Bank* v. *Freedmen's Savings & Trust Co.* 2 Dillon, 11; *National Bank of North America* v. *Bangs*, 106 Mass. 441, 444; 2 Morse on Banks and Banking, (3d ed.), pp. 772, 777; 2 Daniel on Negotiable Instruments (4th ed.), secs. 1362, 1369.

Forged bank notes have often furnished examples of the application of the rule, which is more strictly enforced as to them than other paper, because bank notes form a part of the common currency of the country and circulate as money. A bank receiving paper purporting to be its notes is required to examine it as soon as it has the opportunity, and, if it be unwilling to receive it as genuine, return it promptly; and if it does not, but pays it, it is negligent and is treated as having accepted the paper and adopted it as its own, and cannot thereafter recall the payment, notwithstanding the paper may afterwards be discovered to be a forgery. *Cooke* v. *United States*, 91 U. S. 389, 396; *Gloucester Bank* v. *Salem Bank*, 17 Mass. 33, 45; *Bank of United States* v. *Bank of Georgia*, 10 Wheat. 333.

In speaking of this rule in its application to the treasury notes of the United States, in *Cooke* v. *United States*, 91 U. S. 397, the court said: "When, therefore, a party is entitled to something more than a mere inspection of the paper before he can be required

to pass finally upon its character—as, for example, an examination of accounts or records kept by him for the purpose of verification—negligence sufficient to charge him with a loss cannot be claimed until this examination ought to have been completed. If, in the ordinary course of business, this might have been done before payment, it ought to have been, and payment without it will have the effect of an acceptance and adoption. But if the presentation is made at a time when, or at a place where, such an examination cannot be had, time must be allowed for that purpose ; and, if the money is then paid, the parties, the one in paying and the other in receiving payment, are to be understood as agreeing that a receipt and payment under such circumstances shall not amount to an adoption, but that further inquiry may be made, and, if the paper is found to be counterfeit, it may be returned within a reasonable time."

And in the same case the court further said : " So, too, if the paper is received and paid for by an agent, the principal is not charged unless the agent had authority to act for him in passing upon the character of the instrument. It is the negligence of the principal that binds ; and that of the agent had no effect, except to the extent that it is chargeable to the principal."

Assuming that the remedy of a county against a person to whom it has paid a warrant forged upon itself is governed by this rule, the statutes regulating the issue, payment, redemption and collection of county warrants, must, to some extent, determine the steps necessary for the county to take under the rule, to entitle it to recover from the innocent holder for value the money or other valuable thing obtained from it by a forgery of its warrants.

Under the statutes of this State no warrant can be issued except on an order of the county court duly made

while the court is in session, and entered upon the record of its proceedings. When the order is made and entered upon the record, the clerk is authorized, when requested by the person in whose favor the allowance has been made, to issue a warrant for the amount of such allowance. He is required to keep a register of all warrants issued, in which he shall set forth the numbers, date, name of the person in whose favor drawn, on what account, and the amount thereof. No person is allowed to receive from the clerk any warrant until he has receipted for the same to the clerk, and the clerk is required to preserve the receipt and lay it before the county court at its next meeting for its inspection. It is the duty of the county treasurer to receive the county funds and to pay these warrants when in funds ; to keep a register of all warrants paid by him; and annually on the first Monday of July, and oftener if required, to make a full and complete settlement with the county court of all funds and moneys that have come into his hands as such treasurer, and to file with such settlement a copy of his register of warrants paid, and bring into court all the warrants redeemed by him during the preceding year, when it is the duty of the county court to make actual count of the money and other funds appearing by such settlement to be in the hands of the treasurer, and examine the county warrants produced, and write across the face of each warrant the word "redeemed," and sign the same, and to cause all the warrants thus redeemed to be filed in the office of the clerk. Mansfield's Digest, secs. 1195, 1199, 1203, 1205, 1410, 1415, 1423.

In the issue, cancellation and retirement of county warrants the county court is the sole representative of the county. It is the fiscal agent of the county, and is specially charged with the duty of examining the warrants paid into the county treasury and retiring those lawfully paid or received, and protecting the county

against fraudulent and forged warrants. For this purpose the register of warrants issued is required to be kept by the clerk, and the receipts of the persons to whom the same are issued are required to be taken and submitted to it, and it is authorized to call in all outstanding warrants for examination and re-issue. No officer of the county is authorized to receive forged warrants or accept and adopt them as the warrants of the county. When they receive them, it must be with the understanding that the county court will examine them and pass upon their genuineness. Until such time as the county court has acted or ought to have acted upon the warrants paid into the treasury, there is no duty to examine them, and the county cannot be affected by laches. All who deal in such warrants are bound to take notice of this fact; for it is public law. *Cooke* v. *United States*, 91 U. S. 389.

There is no contention that the Monroe county court failed to act upon the forged warrants in question in due time. On the contrary, it appears that it examined and found them to be forgeries on the 8th of July, 1885, at the time when the county treasurer was required to file his annual settlement and bring them into court for examination. There was then no negligence in the discharge of duty in this respect. But no notice of the discovery of the forgery was given to appellees until the bringing of this suit.

In this case the county is bound by the same rule which makes it the duty of a payor of commercial paper to give notice to the payee of the forgery within a reasonable time after its discovery, or lose his right of recovery against the payee as a penalty for a failure to do so. No rule is laid down by which to determine what this reasonable time is. But it obviously depends upon the reason for requiring the notice. The object of it (the notice) is to afford the payee an opportunity to enforce his right of

2. When county liable for laches.

redress, if he has any, against the person who passed the forged paper to him. What is a sufficient notice must, therefore, depend in a great measure, if not entirely, upon the effect produced by the lapse of time upon the remedies of the payee. It certainly should be given in a time reasonably sufficient to enable the payee to effectually use his remedies for reimbursement, if it can be done. *Cooke* v. *United States*, 91 U. S. 389; *Bank of St. Albans* v. *Farmers & Mechanics Bank*, 10 Vt. 141; *Pindall* v. *Northwestern Bank*, 7 Leigh, 617, 626, 631; *Bank of United States* v. *Bank of Georgia*, 10 Wheat. 333; *Gloucester Bank* v. *Salem Bank*, 17 Mass. 33, 45, 46; *Third National Bank of St. Louis* v. *Allen*, 59 Mo. 310, 313. See further on this subject: *Bank of Commerce* v. *Union Bank*, 3 Comst. 230; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287, 291, 293; *National Bank* v. *Banking Association*, 55 N. Y. 211; *United States* v. *National Bank*, 6 Fed. Rep. 852; *United States* v. *Onondago Bank*, 39 *id.* 259; 2 Parson's Notes and Bills (2d ed.), pp. 597, 600; 2 Daniel on Negotiable Instruments, (4th Ed.), secs. 1371, 1372; Randolph on Commercial Paper, secs. 1488, 1740.

In this case notice should have been given in a reasonable time after the 8th of July, 1885, the time when the forgery was discovered. It was not given until the expiration of two years, ten months and five days after that date. The evidence shows that the warrants used by appellees in paying the judgment against them were purchased from L. A. Fitzpatrick. Fitzpatrick testified that, if they had been returned to him within a reasonable time as "spurious," he could and would have returned the purchase money that he received for them, and that he is insolvent. Appellees, by reason of the lapse of time, are unable to say that the warrants in controversy are or are not the same purchased from Fitzpatrick. We know that, in the time which has elapsed since the dis-

covery of the forgery and before the bringing of this action, appellee's right of redress against their vendor could have been lost or greatly impaired.    The evidence does not show that it was not.    As we cannot say judicially that the appellees, at the time this suit was brought, could have commanded the same facilities for redress which existed when the forgery was discovered, we must pronounce that this delay has destroyed the equity of appellant's claim.

Judgment affirmed.